The opinion of the court was delivered by
Valentine, J.:
This action was commenced originally by John Jasper and Thomas Boniface, partners as John Jas *772 per & Co., against G. Gottleib and A. Gottleib, partners as Gottleib Brothers, to recover the sum. of $2,881.59 for work, labor, money and property furnished by the plaintiffs to the defendants, at their request. The defendants in their answer denied generally the allegations of the plaintiffs’ petition, and also set up new matter by way of cross-petition, alleging in substance, that the plaintiffs and defendants were copartners, and demanding an accounting and a dissolution of the copartnership, and a judgment in favor of the defendants and against the plaintiffs for the sum of $4,602.06. To this answer the plaintiffs filed a reply, duly verified by affidavit, denying generally the allegations of new matter contained in the defendants’ answer. The action was tried before the court and a jury, and the jury found in favor of the defendants and against the plaintiffs, assessing the amount of the defendants’ recovery at the sum of $3,500, and interest at 7 per cent, from the commencement of the action; and judgment was rendered accordingly. The plaintiffs filed a motion for a new trial, which was overruled by the court, to which ruling the plaintiffs duly excepted, and afterward made a case for the supreme court, which case was duly settled, signed and authenticated. Afterward, and on March 18,1880, the plaintiffs filed a petition for a new trial, setting up three supposed causes for a new trial, which were in substance as follows:
1. Ineompetency and misconduct of James Johnson, one of the jurors who served in the case.
2. Newly-discovered material testimony of Fred. Ott.
3. Newly-discovered material testimony of James Laughlin, David Ashinfelter, J. N. Debruler, and M. L. Shaw.
The prayer of the petition was, that the verdict and judgment should be set aside, and that a new trial should be granted in the case. The case was heard upon this petition, by the court without a jury, and the new trial asked for was granted, to which the defendants excepted. The new trial, however, was granted upon the following terms and conditions :
*773 1. That the plaintiffs should pay all the costs of both trials, amounting to the sum of $556.60.
2. That the plaintiffs should pay to the clerk of the district court, for the use of the defendants’ attorneys, the sum of $75, attorneys’ fees; all to be paid within forty-five days from the date of the judgment.
To this the plaintiffs excepted, but afterward, and within the required time, complied with the terms and conditions imposed upon them by the court, by paying said costs and attorneys’ fees. The defendants, within the proper time, filed a motion for a new trial upon this petition for a new trial, which motion was overruled, and the defendants duly excepted, and afterward brought the case to this court for review.
A great many questions are raised in this court; but, with the view that we take of the case, we think it is not necessary to discuss in this opinion more than two or three of them:
I. This petition for a new trial, although instituted merely for the purpose of obtaining a new trial in an action to which it is merely incident, may also in one sense be called an action itself, and a new and independent action; and so far as it is a new and independent action, we suppose it should be governed by the rules of procedure governing other actions. We think we agree with the decision made in the case of Sanders v. Loy, 45 Ind. 229, although we should not place the same construction upon that decision which counsel for plaintiffs in error do. We would think that the petition for the new trial should contain the substance of the evidence introduced on the original trial, and also the substance of the newly-discovered evidence, (as decided in the Indiana case, and in the case of Moore v. Coates, 35 Ohio St. 177, 186;) but we do not think that the petition for the new trial need to contain the exact words of the testimony of the various witnesses who testified on the original trial. But what we started out to say is, that a petition for a new trial may to some extent be considered as a new and independent action, and to that extent may be governed by the same procedure as other actions. But we do not think that such a petition can *774 be considered as constituting or embodying more than one cause of action. And therefore we think that counsel in this case are mistaken in supposing that the facts set forth in the plaintiffs’ petition constitute and make up more than one cause of action; or that they would constitute and make up more than one cause of action if all the facts that might reasonably be set forth in such an action were set forth in this, and were well pleaded. The plaintiffs’ cause of action is constituted as follows: Their original right which they had at the first trial to have a judgment rendered in their favor, and the infringement or violation of that right by the defendants defeating the plaintiffs’ action and procuring a judgment to be rendered in their own (the defendants’) favor. The .plaintiffs’ single and only remedy is a new trial. They do not have three remedies; they do not have a separate remedy for each of their supposed causes of action, but only a single reniedy, a single new trial, for all their supposed causes of action. Of course the right of the plaintiffs upon the original trial to have judgment rendered in their favor was composed of several minor and subordinate rights, each of which was capable of being violated and infringed. But the violation and infringment of each of these minor and subordinate rights could not each separately and singly constitute a separate and distinct cause of action. All together would simply make up and constitute one single -and indivisible cause of action, founded upon the violation of one single and indivisible, but more comprehensive right. If the facts set forth in the plaintiffs’ petition for a new trial constituted three sepárate and distinct causes of action, then the plaintiffs might have commenced three separate and independent actions upon them, at three separate and different times, and obtained three separate and distinct judgments; for every separate cause of action will authorize the commencement of a separate action, and sustain the rendition of a separate judgment. A cause of action is often founded upon many separate and distinct facts, or composed of many separate and distinct items. A long and voluminous account, composed of innumerable items, *775 •constitutes only one cause of action; and the enforcement bf a note and mortgage, with all the items of principal, interest and liens, constitutes only one cause of action; and we might ■give other illustrations, but we do not think that it is necessary. We think the petition for the new trial in-this case would be better if all the words therein contained, purporting to state that more than one cause of action was alleged or set forth in the petition, were stricken out. Of course, it is well to number the separate grounds for the new trial, but all these separate grounds must be considered as constituting ■only the various grounds of one single remedy.
II. We think the court below erred in excluding the evidence of qertain jurors, whose testimony was offered by the plaintiffs to show what the juror James Johnson stated in the jury room, while the jury were deliberating upon their verdict. Of course the testimony of jurors cannot-be received to show matters which essentially inhere in their verdict. A juror cannot be introduced tó show that he did not agree to the verdict; or that he intended something different from what he in fact found; or that he was misled by some remark of the court, or counsel, or his fellowjurors; or that he was influenced by his fellow-jurors, or by others; or that he did ■not understand the pleadings, or the evidence, or the instructions of the court; or that his verdict was not founded upon the evidence, but was founded upon something extraneous thereto, and outside of the case. Nor can he be permitted to state the reasons or the grounds upon' which he rendered his verdict, or the motives which governed him; and indeed he cannot be permitted to testify to anything which rests •solely and exclusively within his own personal consciousness, •or which necessarily constitutes or forms á portion of his •verdict. But the juror may testify to fads which transpired within his own personal observation, and which transpired in such a manner that others, as well as himself, could be cogni,zant of them, and could testify to them. For instance, we think it was perfectly competent and proper for the jurors who tried this cause to testify that while they were deliberating upon *776 their verdict, the juror Johnson stated that he personally knew that the plaintiffs and the defendants were copartners, and that he knew it from facts which came within his own personal knowledge, stating some of the facts; and that it was generally understood and believed by other people who had knowledge of the business of the plaintiffs and the defendants, that they were copartners, ás claimed by the defendants. But the jurors could testify to thesethings only as facts, and could nottestify directly as to whether these facts had any influence upon their verdict or not. It will make no difference, however, that these facts may prove, or tend to prove, that the jurors were unduly influenced, or that a court might infer from them that the jurors-were unduly influenced; nor can it make any difference that these facts might prove or disprove something which inheres in the verdict itself. All that is necessary is, that the facts should be such that two or more persons might personally take cognizance of them, and might testify to them, and that the facts-themselves to which the jurors may testify do not inhere in the verdict as essential parts or portions thereof. Decisions may be found in Massachusetts, and possibly elsewhere, apparently in conflict with the views expressed by us; but we-cannot regard such decisions as founded upon sound principles-of jurisprudence, or as tending in any high degree to the promotion of the bestinterests of justice; and there are numerous decisions holding the contrary doctrine. Indeed there are decisions in some peculiar and exceptional cases, holding that the-evidence of jurors may be used to overturn their own verdicts, even where the facts rest in the exclusive personal consciousness of the jurors themselves, and even where such facts are-embodied in the verdict itself as essential ingredients thereof. Upon the general question of the admissibility of evidence of jurors to overturn verdicts, we would refer to the case of Perry v. Bailey, 12 Kas. 539, and cases there cited.
We think a portion of the evidence of the jurors offered in the present case was competent evidence, and that the court-below erred in excluding it. The criticism found in one of the briefs of counsel for plaintiffs in error, with reference to- *777 those jurors who were willing to testify with regard to the conduct of Johnson, we think is very unfair; and also the criticism of the same counsel with respect to some of the witnesses introduced by the plaintiffs below.
III. We think that the court below also erred in permitting the plaintiffs to introduce evidence with reference to Johnson’s statements made by him after the termination of the original trial. Such evidence is clearly nothing but hearsay evidence. Such evidence is not evidence of what Johnson’s knowledge, opinions or feelings were at the time of the original trial, or at any time prior thereto; but it is simply evidence as to what Johnson said his knowledge, opinions and feelings were at that time. Johnson’s statements made prior to the trial might be evidence of what his knowledge, opinions and feelings were at the time of the trial; but his statements made after the trial, not under oath, could not be evidence of such facts. His statements made after the trial might show what he knew at the time of making the statements, but would not show what he knew at some time previous to that time. It is wholly immaterial what Johnson knew, or what his opinions were, or how he felt, at the time that he made these statements after the trial. The only material thing was: What did he know about the case, or what were his opinions in the case, or what were his feelings with reference thereto at the time of the trial? And statements made by him after the trial, and not under oath, would not be competent evidence of these facts. For this error, the judgment of the court below granting the new trial will have to be reversed.
• IV. Several other questions are raised in this case, but we do not think that it is necessary to discuss them. We think the decision of the court below with reference to the other questions was correct. Indeed, we do not think that the court below committed any material errors except those already mentioned; and we also think that the final determination of the court granting the new trial is correct; and except for the error in permitting evidence to be introduced *778 showing the statements of Johnson after the trial had terminated, the judgment of the court below granting the new trial would not be reversed.
The judgment of the court below granting the new trial will be reversed, and the cause remanded, ordering'that a new trial be granted upon the petition for the new trial.
All the Justices concurring.