**Lawrence E. INGRAM, Petitioner,**

v.

**Sherman H. CROUSE, Warden, Kansas State Penitentiary, Lansing, Kansas, Respondent.**

Civ. No. L–1184.

United States District Court,
D. Kansas.

May 26, 1970.

Lawrence E. Ingram, pro se.

Kent Frizzell, Atty. Gen. of Kansas, Edward G. Collister, Jr., Asst. Atty. Gen., Topeka, for respondent.

ORDER

WESLEY E. BROWN, District Judge.

This matter is presently before the Court following receipt of an Answer and Return and a Traverse thereto, both in response to our Rule To Show Cause which was filed April 10, 1970. After reviewing all records and papers filed in this case, this Court makes the following findings and Order.

Our Rule issued so that this Court might determine if allegations raised in Ingram's petition pertain to the giving of an "Allen" Instruction by his state trial court, the propriety of that charge having been previously federally adjudicated by the United States Court of Appeals for the Tenth Circuit. See Ingram v. Crouse, No. 9759 (10th Cir. Feb. 7, 1968), unpublished. We find that Ingram's present allegations relate to issues substantially different from those previously adjudicated, and we also find he has exhausted his state remedies in respect thereto. See Respondent's Exhibits "B", "C", "D" and "E".

The grounds on which Ingram bases his allegation that he is being held in custody unlawfully are the following:

(a) The jury was guilty of misconduct, whereby one or more of the jurors sacrificed his honest opinion for the sake of arriving at a verdict.

(b) The verdict of the jury was a compromise verdict whereby Petitioner was denied a fair and due consideration of his case as guaranteed by Section 10 of the Kan-

sas Bill of Rights, and the 14th Amendment to the Constitution of the United States.

If the findings of fact as determined by Ingram's trial court in his K.S.A. 60–1507 motion and as approved by the Kansas Supreme Court are supported by the record, such findings are presumptively correct pursuant to 28 U.S.C. § 2254(d). This Court has before it the complete transcript of his § 1507 evidentiary hearing, the Journal Entry of that case, the transcript of his motion for a new trial and the opinion of the Supreme Court of Kansas reviewing those proceedings. See Respondent's Exhibits "C", "D", and "E".

It appears from the record that on July 8, 1965 Ingram was charged with the commission of the crime of burglary and larceny, in violation of K.S.A. 21–520, 21–524 and 21–533. His case was tried to a jury on February 15–17, 1966 in the District Court of Wyandotte County, Kansas, and Ingram was found guilty of the crime of grand larceny in violation of K.S.A. 21–533, and not guilty of the crime of burglary in violation of K.S.A. 21–520. Ingram's allegations of jury misconduct and compromise verdict pertain to that verdict.

Four of the jurors who were on the panel which tried and convicted Ingram of grand larceny testified at his § 1507 hearing. The jurors testified that they deliberated for approximately one and one-half days before they reached a verdict. Throughout most of that time several votes were taken, and the results were consistently nine votes of guilty on both charges, and three votes of not guilty on both charges. In essence two who had voted for acquittal testified at the hearing that they felt the government had not proved its case, thought Ingram innocent of both counts, agreed to the guilty verdict, not because they believed he was guilty, but because they felt that Ingram might be retried and found guilty on both charges. Three characterized the verdict as a compromise. See Respondent's Exhibit "C". One of those who felt the verdict

had been a compromise had been with the majority voting for conviction on all counts.

The trial court determined that the testimony as presented by the jurors at the § 1507 hearing was not sufficient to establish misconduct on the part of the jury in arriving at a compromise verdict as alleged by Ingram. See Respondent's Exhibit "D". The Supreme Court of Kansas affirmed that finding. See Respondent's Exhibit "E".

In 1892 the United States Supreme Court in Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892), approved the rule that

"on a motion for a new trial on the ground of bias on the part of one of the jurors, the evidence of jurors as to the motives and influences which affected their deliberations, is inadmissible either to impeach or to support the verdict. But a juryman may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind. So a juryman may testify in denial or explanation of acts or declarations outside of the jury room, where evidence of such acts has been given as ground for a new trial."

In that case affidavits of jurors were received to show that newspaper comments on a pending capital case had been read by the jurors. Such evidence was considered an extraneous influence. In Stein v. New York, 346 U.S. 156, 178, 73 S.Ct. 1077, 1089, 97 L.Ed. 1521, 1523, 1539 (1952), a case wherein the defendants complained of the submission to the jury the question of the voluntariness of confessions, the United States Supreme Court, in commenting on the inability of a reviewing court to see what a jury has really done, said,

"Nor have the courts favored any public or private post-trial inquisition of jurors as to how they reasoned, lest it operate to intimidate, beset and harass them. *This Court will not accept their own disclosure of forbidden quo-*

*tient* verdicts in damage cases. McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300. Nor of *compromise in a criminal case whereby some jurors exchanged their convictions on one issue in return for concession by other jurors on another issue.* Hyde v. United States, 225 U.S. 347, 32 S. Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A 614. 'If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation; to the destruction of all frankness and freedom of discussion and conference.' McDonald v. Pless, supra, 238 U.S. at pages 267, 268 [, 35 S.Ct. at page 784]." [Emphasis supplied.]

In Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114, a motion for new trial set forth that the verdict in that case was the result of an agreement between certain of the jurors who believed all of the defendants should be convicted and certain jurors who believed that all of the defendants should be acquitted, by which agreement two of the defendants were acquitted and two were convicted. In that case the trial court had instructed the jury, after lengthy deliberations, that they could consider the possibility of the guilt of some of the defendants, and not of others. The Supreme Court, even assuming the jury had felt coerced by a threat of confinement to acquit those who they were convinced were guilty, or convict those who they were convinced were innocent, said,

"But, even conceiving such possibility, we think the court rightly ruled. It was within the issues of the case to convict some of the defendants and acquit others, and we think the rule expressed in Wright v. Illinois & M. Teleg. Co. 20 Iowa, 195, and Gottleib Bros. v. Jasper, 27 Kan. 770, should apply, *that the testimony of jurors should not be received to show matters which essentially inhere in the verdict itself and necessarily depend upon the testimony of the jurors, and*

*can receive no corroboration.* [Emphasis supplied.]

■ The United States Courts generally have consistently adhered to the general rule that ordinarily jurors in the United States Courts will not be heard to give testimony, either orally or by affidavit, for the purpose of impeaching the verdict returned where the facts sought to be shown are such that they essentially inhere in the verdict. See Young v. United States, 163 F.2d 187, (10th Cir. 1947), certiorari denied, 332 U.S. 770, 68 S.Ct. 83, 92 L.Ed. 355; Loney v. United States, 151 F.2d 1 (10th Cir. 1945); Johnson v. Hunter, 144 F.2d 565 (10th Cir. 1944).

■ After a review of the transcript of the evidentiary hearing we concur with the finding of the Supreme Court of Kansas that

"None of the evidence introduced by the petitioner related to extrinsic conduct, that is, to physical facts, conditions or activities bearing upon or influencing the jury in its determination of the issue of guilt or innocence. The testimony of those jurors who would now compromise their verdict relates solely to the reasoning process by means of which they arrived at and acquiesced in the verdict. This evidence was not competent for the purpose of impugning the verdict."

■ We are further satisfied that the state court hearing was adequate to develop the facts and that it met the requirements of Townsend v. Sain, 372 U. S. 293, 83 S.Ct. 745, 7 L.Ed.2d 770 (1963), and of 28 U.S.C. § 2254(d), and therefore we are not required to hold an additional evidentiary hearing. See Maxwell v. Turner, 411 F.2d 805 (10th Cir. 1969). Accordingly,

It is ordered that the action and petition previously filed be dismissed and all relief be denied; that the Clerk enter judgment accordingly; and that copies of this Order be transmitted to the parties herein named and to the Kansas Attorney General in Topeka, Kansas.